## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## LOCAL 490, INTERNATIONAL HOD CARRIERS BUILDING AND CONSTRUCTION LABORERS UNION, AFL–CIO, and J. Carl Dicus, Sr., Business Agent, Respondents.

### No. 16801.

United States Court of Appeals
Eighth Circuit.
March 15, 1962.
Rehearing Denied May 18, 1962.

Tom Gentry, Little Rock, Ark., for respondents.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

Nancy M. Sherman, Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, General Counsel, National Labor Relations Board, Dominick L. Manoli, Associate General Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Melvin Pollack, Attorney, N. L. R. B., Washington, D. C., on the brief, for petitioner.

VOGEL, Circuit Judge.

The National Labor Relations Board, petitioner, seeks enforcement of an order against the respondents pursuant to § 10(e), 29 U.S.C.A. § 160(e), of the National Labor Relations Act, 49 Stat. 449, 61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. §§ 141 et seq., as amended. The Board found that respondents had violated § 8 (b) (2) [1] and (1) (A) [2] by causing the Dickmann - Pickens - Bond Construction Company to refuse to hire one Oree Jefferson, in violation of § 8(a) (3) [3] and in having an unlawful exclusive hiring arrangement with Dickmann.

That part of the Board's order of which enforcement is sought requires the respondents to cease and desist from causing or attempting to cause Dickmann to discriminate against employees in violation of § 8(a) (3) and from in any other manner restraining or coercing employees in the exercise of their statutory rights. Affirmatively, the respondents are required by the order to notify Dickmann and employee Jefferson in writing that they have no objection to his employment and to post appropriate notices. Additionally, the union alone is required to make Jefferson whole for any loss of pay he may have suffered by

---

1. 29 U.S.C.A. § 158:
   "(b) It shall be an unfair labor practice for a labor organization or its agents—
   \* \* \* \* \*
   "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

2. "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title \* \* \*." [Section 157: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, \* \* \* and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."]

3. 29 U.S.C.A. § 158:
   "(a) It shall be an unfair labor practice for an employer—
   \* \* \* \* \*
   "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization \* \* \*."

reason of the discrimination against him. The findings and order of the Trial Examiner and Board are reported in 130 N.L.R.B. 380.[4]

The main question on this review is whether there is substantial evidence to support the Board's findings, upon which its order is based. Section 10(e) of the Act, 29 U.S.C.A. § 160(e), provides, *inter alia:*

" * * * The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

This court may not substitute its judgment for that of the Board nor may it disturb the Board's findings where they are based upon substantial evidence. N. L. R. B. v. Link-Belt Co., 1941, 311 U.S. 584, 596–597, 61 S.Ct. 358, 85 L.Ed. 368; N. L. R. B. v. Solo Cup Co., 8 Cir., 1956, 237 F.2d 521, 522–523.

Dickmann, an Oklahoma corporation maintaining its principal office and place of business in Little Rock, Arkansas, was engaged in the construction of a race track for the Oak Lawn Jockey Club. Dickmann employed one Thurmon Sharp as its labor foreman on that particular job. Sharp, in compliance with union's by-laws,[5] became affiliated with union. Thereafter Sharp obtained all laborers for the job by calling the union hall. Shortly after Sharp became foreman of the job Oree Jefferson, a member of Local 490, came to the job site and asked Sharp for work. Jefferson testified:

"Well, I asked him, I said, 'Mr. Sharp, you know I have been your hand once before, I was your jack hammer man. Why not give me a job back.'

"He said, 'I will when I get started and needing some men.' He said, 'I will call through the hall.'

"I said, 'O.K., I will depend on you calling through the hall.' "

Three or four days thereafter Sharp called the union for four or five men. A little later he called union for ten or twelve men. Shortly thereafter Jefferson was at the union hall looking for work when the telephone rang. The union's bookkeeper answered the telephone and said, "O.K., Mr. Sharp." "I will send you four men Monday morning."

"Q. What happened after that? A. When she hung up and everything I asked her, 'Miss Ethel, will you give me a work order to go out there?' She said, 'No. Mr. Dicus wants to see you and have a conversation with you.' I said, 'Why

---

4. Since Local 60, United Brotherhood of Carpenters, etc. v. N. L. R. B., 1961, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1, and Local 357, Intern. Broth. of Teamsters, etc. v. N. L. R. B., 1961, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, the Board has dropped its contention that the exclusive hiring arrangement was in and of itself unlawful and does not now seek enforcement of that part of its original order providing for refund of all fees and dues during the six months preceding the filing of charges herein.

5. The pertinent by-laws read as follows:
"GENERAL RULES
"*Rule 10*—No members allowed to solicit job at any time.
"FOREMEN
"*Rule 1*—When there are six or more laborers working on any job, there shall be a Laborers' Foreman, who shall be eligible for membership in Construction and

General Laborers' Local Union No. 490, and be in possession of the current working card and comply with the other requirements of these working rules.
"*Rule 2*—It shall be the duty of each foreman to work in conjunction with the steward on the job and see that the rules are enforced.
"*Rule 3*—No foreman shall be predesignated except by consent of the B.A.
"STEWARDS AND THEIR DUTIES
"*Rule 2*—The Steward * * * shall demand and examine the working cards of every member who comes to the job to work. Should any member who is on the job fail to produce his card or permit, he shall be notified to bring it the following morning. Failure to do this, the steward shall notify the foreman and said foreman shall not permit said member to go to work until he can produce his card or permit, if he is a member."

does he want to have a conversation with me, what reason, what cause?'

"She said, 'I don't know.'

"I said, 'I will see him in the morning.' "

Of that conversation which took place the following morning Jefferson testified:

"A. I asked him, I said, 'Mr. Dicus, why won't you send me out on any of the jobs?'

"He said, 'You have been working with an unfair labor.'

"I said, 'Who is that?'

"He said, 'R. T. Higgins, he is unfair.'

"I said, 'He is?' I said, 'Mr. President, why are you just now bringing it up? It has been about 1956 when I was working with Mr. Higgins. The man sitting in the hall had worked like I had and on the job and the other men in the union hall with me and he is just bringing it up against me.' I said, 'Mr. President, I am sorry. I needs a job bad.'

"Q. Anything else happen? A. No, sir. He said, 'I can't give you no work because you have been working unfair.'

"I said, 'O.K. Thank you, Mr. President', and walked on out."

At the time of this occurrence Jefferson had not been sent out on a job from the hall from 1955 until after he brought the instant charge in 1958. After the bringing of the instant charge he was sent to one job where he worked four or five days. The union rules prohibited Jefferson from soliciting work on his own. Jefferson paid his dues all the time in question.

Respondents insist that the only time there can be a violation of § 8(a) (3) as required in § 8(b) (2) is when the effect is to "encourage or discourage membership in any labor organization". Respondents' argument is that there is no violation here because Jefferson was a member of the union and, therefore, no action was taken which could have the ef-

fect of encouraging or discouraging membership in any labor organization. Respondents rely on this court's opinion in Del E. Webb Construction Co. v. N. L. R. B., 8 Cir., 1952, 196 F.2d 841, 38 A.L.R. 2d 402, as controlling. However, Webb is distinguishable from the case at bar. There the court said:

"The decisive factor, however, is that the individual complainants did not seek employment from the Company, and the Company therefore could not discriminate against them." 196 F.2d at 848.

In the instant case there is ample evidence to support the finding that Jefferson did in fact seek employment from the company. Additionally, the statement in Webb (196 F.2d at 848) that there could not be discrimination so as to encourage or discourage union membership where the complainant was already a member of the union can no longer be considered as authority. Respondents' contention is fully answered by the Supreme Court in Radio Officers' Union, etc. v. N. L. R. B., 1954, 347 U.S. 17, 39–42, 74 S.Ct. 323, 98 L.Ed. 455, wherein this court's opinion in N. L. R. B. v. Intern. Broth. of Teamsters, etc., Union No. 41, 8 Cir., 1952, 196 F.2d 1, was reversed. This court had held that the evidence therein supported the Board's finding that the union had caused or attempted to cause the employer to discriminate against an employee for failure to pay his union dues on time by reducing him in rank on the seniority list, but that such evidence would not support the Board's conclusion that such discrimination had or would encourage or discourage membership in a labor organization. In discussing the meaning of "membership", the Supreme Court said, beginning at page 39 of 347 U.S., at page 335 of 74 S.Ct.:

"In past cases we have been called upon to clarify the terms 'discrimination' and 'membership in any labor organization'. Discrimination is not contested in these cases: involuntary reduction of seniority, *refusal to hire for an available job,*

and disparate wage treatment are clearly discriminatory. But the scope of the phrase 'membership in any labor organization' is in issue here. Subject to limitations, we have held that phrase to include discrimination to discourage participation in union activities as well as to discourage adhesion to union membership.

"Similar principles govern the interpretation of union membership where encouragement is alleged. The policy of the Act is to insulate employees' jobs from their organizational rights. Thus §§ 8(a) (3) and 8(b) (2) were designed to allow employees to freely exercise their right to join unions, *be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood.* * * *" (Emphasis supplied.)

And at page 42, 74 S.Ct. at page 336:

"From the foregoing it is clear that the Eighth Circuit too restrictively interpreted the term 'membership' in Teamsters. Boston was discriminated against by his employer because he was delinquent in a union obligation. Thus he was denied employment to which he was otherwise entitled for no reason other than his tardy payment of union dues. The union caused this discrimination by applying a rule apparently aimed at encouraging prompt payment of dues. The union's action was not sanctioned by a valid union security contract, and in any event, the union did not choose to terminate Boston's membership for his delinquency. Thus the union by requesting such discrimination, and the employer by submitting to such an illegal request, deprived Boston of the right guaranteed by the Act to join in or abstain from union activities without thereby affecting his job. * * *"

In the instant case Jefferson was discriminated against by Dickmann because he was delinquent in union obligations,

i. e., he worked for an "unfair" employer, one R. T. Higgins. He was denied employment to which he was otherwise entitled for no reason other than his having violated union rules by working for an "unfair" employer. The union caused this discrimination by applying a rule apparently aimed at encouraging members not to work for unfair employers. Thus the union, by refusing to certify Jefferson for work, and Dickmann, by refusing to employ Jefferson except through the union, deprived Jefferson of the right guaranteed by § 7 of the Act (29 U.S.C.A. § 157) to join in or abstain from union activities without thereby affecting his job.

We have examined the record as a whole and must conclude that the Board's findings that

"* * * Jefferson's failure to receive employment at Dickmann's Oak Lawn project was caused by Respondent's discriminatory refusal to issue him a referral card * * *"

and

"* * * by this refusal * * * Respondents caused and attempted to cause Dickmann to discriminate against Jefferson, and thus engaged in a further violation of § 8(b) (2) of the Act"

are supported by substantial evidence.

■ Through one Lee Barron, a former member of and secretary and treasurer of the union, there was introduced and received in evidence General Counsel's Exhibit No. 3, being a copy of the by-laws of the union under date of March 1, 1953. Barron testified that he was a member of the by-laws committee which prepared the by-laws, that Exhibit 3 was a true and correct copy thereof, and that such by-laws were in effect when he left the union in May, 1958. (The time of the alleged discrimination herein is May, 1958.) The objection to General Counsel's Exhibit 3 was:

"We object to it as not being the By-Laws of the Local Union at this time or the time that this incident

took place. This man said that he left in May, 1958. The allegations here in this complaint come after that time, if Your Honor please. These By-Laws wouldn't have any connection with this particular case."

The Hearing Officer stated:

"* * * I will receive them as properly identified as in effect up until May of 1958. That is all of its effect at this point."

Respondents now claim error in that the introduction of such copy violated the best evidence rule. No objection on such grounds was made at the time the exhibit was offered in evidence. The objection may not be raised here for the first time. Local 901, Intern. Broth. of Teamsters, etc. v. Compton, 1 Cir., 1961, 291 F.2d 793, 796.[6]

Respondents next assign as error what counsel claims to be the refusal of the Hearing Officer to receive into evidence minutes of a union meeting of November 10, 1955, at which it is claimed there was a repeal of the aforementioned by-laws. A careful examination of the record indicates that the minutes in question were never offered in evidence and the Hearing Officer never refused to receive them. Affirmatively, counsel for the respondent union was told by the Hearing Officer that he was entitled to offer "the whole document if you want to do it" but it was suggested that instead thereof the pertinent parts be read into the record. Counsel was told by the Hearing Officer:

"* * * They are perfectly admissible on that basis. They are admissible by way of either an offer of the exhibit itself or by way of oral testimony from the witness."

At no time were the minutes themselves offered nor was there an attempt to read the pertinent portions thereof into the record as suggested by the Hearing Officer. It is quite possible that coun-sel failed to make the offer because the witness, Carl Dicus, who was the business representative and financial secretary-treasurer of the union and through whom the minutes were identified, had testified that before repeals or amendments to the by-laws became effective they had to be approved by the International Union; that the International Union had not approved the submitted changes; and that the alleged changes were *not* reflected in the minutes here under discussion. Certainly no error can be successfully charged here.

We have examined all of respondents' contentions and find them to be without merit. The order of the Board will be enforced to the extent it has requested enforcement on this appeal.

---

6. It may be noted here that the constitution or by-laws of a union have been held admissible as evidence of discriminatory practice. See N. L. R. B. v. Local Un-ion No. 450, Intern. Union of Operating Engineers, 5 Cir., 1960, 281 F.2d 313, 315–316, certiorari denied 366 U.S. 909, 81 S.Ct. 1084, 6 L.Ed.2d 235.